Good morning, Your Honor. May it please the Court, my name is Alex Morales and I represent the petitioners Umugandi Soltanova and Alex Soltanova. I just have two minutes of my time for rebuttal. This case is an immigration asylum case where the petitioners fled Russia after they started experiencing persecution at the hands of a Muslim group. The petitioner was married to a journalist who was covering the Chechen conflict and he was killed while he was working. After he was killed, the petitioners started experiencing persecution at the hands of an Islamic group who were threatening to hurt the petitioner and her son unless she turned over writings and a videotape that supposedly her husband had compiled. The judge in this case denied the asylum application, finding that the respondent was not credible, and also finding that as a matter of discretion he would deny the case because the petitioner had used a U.S. passport in order to enter the United States. As far as the risk-availability determination, we believe that it was erroneously issued because the reasons cited by the judge are that the petitioner did not withstand substantial scrutiny. One of the things that the judge mentioned was that the identity itself, he argued that the petitioner had not established identity, but she did testify as to her own identity and she did also submit identity documents to the court to establish that. I believe that the immigration judge was particularly troubled about the fact that the petitioner could not testify in detail as to what her husband was doing, what kind of coverage he was doing as to the Chechen conflict. The petitioner was clear that she didn't know much about it and that she didn't ask much about it. What is clear to her was that he was a journalist and that he was writing regarding the Chechen conflict and that he was killed covering the Chechen conflict, but she didn't know the details about that. I think that's what was troubling the immigration judge. The judge also found that she had testified inconsistently with her oral testimony was inconsistent with her written testimony. One of the things that the judge pointed to was the fact that the petitioner had said in her written testimony that her son was staying with neighbors. And the judge made a point of underlining the word neighbors. I said that was significant. And in oral testimony, the petitioner testified that her son was staying with a neighbor. We don't think that that's a significant inconsistency and that the petitioner should not have been faulted for that. Also, the whole issue with the U.S. passport, the petitioner admitted the fact that she used a U.S. passport and that she traveled from Russia, from Dagestan, rather, to Moscow and then to Yerevan, Armenia, and that in Yerevan, Armenia, apparently, she purchased a U.S. passport in order to travel to the United States. But her reason for doing that was because she was seeking a safe haven from persecution. Have we any cases where they have found this to be a felony and making the person ineligible? That seems to be the claim of the government. Yes, Your Honor. I mean, it is a claim. And I think that the petitioner admitted as much. I mean, she did admit that she knew that she was committing a crime in order to arrive at the United States. I think it was a circumstance in the sense that what she obtained was a U.S. passport as opposed to what — Well, my question to you was whether there are any cases that say that that's a basis for denying admissibility, because it is a felony to get a false U.S. passport. Are there any cases that say that? I'm not aware of any specific cases, Your Honor. I think it is a crime. However, given the circumstance, the fact that she was escaping persecution — Well, I understand all that. I was just wondering whether there was any basic authority for what the government is saying in this regard. I'm not aware of any specific authority, Your Honor, as to that. And I would argue that given the circumstances, that her act should be excused to the extent that she did, and, in fact, did it for that reason, for that sole reason. And also, the judge, you know, he talked in terms of the addressability determination, but essentially his decision finding her ineligible was rooted in the fact that she had used a false passport. And looking at the, like, the, you know, timing in terms of this case, you know, she did it. She had entered in December 2001. You know, it struck me that perhaps one of the reasons that it seemed a little harsh is in terms of, like, you know, how shortly after the 9-11 incident this, you know, this entry was. And I think maybe she might have been faulted for that reason. You know, it might have appeared particularly egregious for that reason. But in terms of the other reasons, the Petitioner — I mean, the judge faulted the Petitioners for not establishing the link to the journalist's husband, but both the female Petitioner and her son both testified in terms of the relationship to the husband and the fact that he was a journalist covering, you know, the Chechen conflict. I think that they did establish, you know, the relationship. The judge never reached the issue as to whether or not they had experienced past persecution and did not reach the issue as to whether or not they had a well-founded fear of future persecution. We would argue that the address to the lady's termination was an error and that it should be reversed. The judge faulted the Petitioner, for example, in terms of being vague about the activities of the journalist's husband. And again, the Petitioner was clear in terms of saying that she didn't know about it. She didn't ask about it. I think that given the fact that the Chechen conflict was such a major event and that it caused so many problems and that she did fear being hurt that was insulted at, her not wanting to know seems almost natural in a way. If there are no further questions, I'll reserve the rest of my time. I know. I have a — well, you can maybe answer. Where in your opening brief — you've given us on your oral argument today two grounds, as I understand it, the adverse credibility and then the alternative ground of the false U.S. passport. Where in your opening brief do you raise the second issue? Your Honor, I discussed it within the — within the whole issue as to the denial of the asylum application. I didn't discuss it as a specific issue. Where did — well, maybe when you come back, could you just cite the pages? Or if you have it now, that would be helpful. Oh, maybe when I come back. Thank you. Yeah, counsel. Yeah, I have one question. Yes. Am I right that on her brief to us, she did not challenge the discretionary denial of asylum? It wasn't raised as a specific issue, Your Honor. It was raised within the whole of questioning the judge's credibility and determination. I think that the way that I raised it was that the judge couched it in terms of the use of the false passport, and I pointed out the fact that the petitioner did admit that she had used a false passport in order to enter the United States. And I may not have — Well, that may be a factor in a credibility determination. But isn't it a separate issue for us whether a discretionary denial is being appealed? Yes, Your Honor. And we did not raise it specifically in the opening brief. The government did raise it in their answer brief. And I think, Your Honor, like I said, I did try to — I raised it indirectly in terms of the credibility determination, and I didn't raise it specifically in terms of the — as a separate basis. All right. Thank you. Thank you. May it please this Court, my name is Andrew Oliveira on behalf of Respondent Eric Holder, the Attorney General. I want to get you right — I want to get you right to the question on my mind. That is, putting aside asylum where there may not have been an appeal or may have been waived on discretionary denial. But as to the other claims, on the adverse credibility decision, what do you think are the specific and cogent reasons that the I.J. could find her not credible? Certainly, Your Honor, there is a number of bases for the adverse credibility finding. First, her testimony was vague as to her relationship with her husband. For example, she was unable to testify as to his birthday. She was unable to testify as to the date of their wedding. She repeatedly stated that she had no understanding of his work other than the fact that he was a journalist in Chechnya. She didn't know if he was reporting in favor of the Russian government, whether he was reporting in favor of the Muslim separatists. And her testimony was inconsistent. It was vague. Excuse me. Are we to assume that all spouses are supposed to be fully informed about what their husbands do? No, but taken together. No, just — you cited that. So why is that at all relevant? Whether she knew what he was doing, since it was presumably controversial. I found that a little odd. Well, it's relevant to her claim as to whether or not she would be persecuted on account of his work. Well, her knowledge of what he did, if he was out there as a reporter who was doing things that were found to be sufficient to get him murdered, is it any wonder that she might not know but nonetheless be victimized as having been? Since you, representing the government, presume that she should have known and the I.J. presumes she should have known, why wouldn't her attackers presume that she should have known even if she didn't? Well, the problem is not just that she didn't know. She didn't provide a convincing explanation as to why she never inquired as to what her husband did. And given her other inconsistencies and omissions, the immigration judge is not compelled to accept her testimony. For example, in her asylum application, she claims that she was beaten on the street, yet in her testimony that's nowhere to be mentioned. Again, in her — in the birth certificate of her son — But wait, on that one, on that one you just mentioned, didn't she say she was beaten at her apartment then? So there's an inconsistency of street versus apartment. But it's — but it's not like she didn't mention a beating. Well, and furthermore, in her asylum application, she claims that she was — she and her husband were continuously harassed before the — since 1991. In her testimony, there's no mention of any harm until her husband dies. Let's go back — let's go back to your last point about the beating in the street as opposed to beating in her apartment. Did the I.J. confront her with that inconsistency and give her a chance to explain it? My recollection is that the immigration judge did give her the opportunity to address her inconsistencies. She — I mean, her testimony throughout is vague and almost nonresponsive. There is little — Well, on that last one about the beating, my impression from reading what I read of the decision and parts of the testimony was that the I.J. did not confront her with that particular inconsistency of beating in the street versus beating in the apartment. So can you give me a record cite on that? I don't have that off the top of my head. You may be correct, Your Honor, but I would point out, though, that, again, her testimony is inconsistent and vague throughout. She had the opportunity in her direct examination to present every piece of evidence that she had. If she had been beaten on the street, she could have mentioned this. This claim that her testimony is — was found to be not credible because it was disjointed is simply not the case. She had an opportunity to present her claim, and she did not. Her testimony was inconsistent. It was vague. For example — Those are conclusions, inconsistent and vague. Witnesses, as we just heard in the first case argued today, inconsistent statements in court are not unusual. Indeed, that's an evidence of good cross-examination. Now, if she came up with some inconsistent statements that were troublesome to the I.J., our jurisprudence says that the person has to — if there's that material to the I.J., the I.J. can't come along later and say, well, this person was inconsistent without having given the — without the petitioner being given some opportunity to explain it. Now, taking the beating, if she had testified — your point seems to be, well, she called it a beating in the street, and she later didn't mention that, but she talked about being beaten in her apartment. Now, one could question, did she, in the first statement, mean that she gave that it was in the actual street, or did she mean outside, in the street outside her house? The second beating was the same beating. It's just the location changed. Those would be the kinds of things one might want to consider. Was that ever explored? That specific one was not. I would point out, though, that one of the major inconsistencies relied upon by the immigration judge was specifically raised to Sultanova, and she had no — or she had no convincing explanation for that. Which was what? The birth certificate of her son. The birth certificate presented in the record has her second husband as the birth father. But that was explained that you can do that in Russia. You can get it changed. But the immigration judge is not compelled to accept that explanation, that the biological father can be changed to a nonbiological father, especially in light of the rest of her testimony, which is simply not convincing, given that, again, her testimony was vague and nonresponsive. You just need to turn to any page of her testimony, and the vast majority of responses to any question was, I don't know. And without such, she cannot carry her burden. Why does the birth certificate issue go to the heart of her application? I mean, why does it matter? Why does it matter if her later husband is listed as the father when someone else is? What does that have to say about her claim of being beaten because of what the Islamic fundamentalists were concerned about? It calls into question her very story of that she was married to her second husband who was killed on account of his work as a journalist, and then she was subsequently harmed because of that. The birth certificate calls into question her, the fundamental marital relationship with this person, such that she actually suffered harm on account of a protected ground. I don't understand why the birth certificate says anything either way. What do you mean? It seems to me that she named the journalist as the father of the child on the birth certificate. Correct. But she honestly says, he wasn't the father, but I changed it because you can do that when they're going to raise the child. So it seems to me, I can't understand this being an issue at all. Again, though, the immigration judge is not compelled to accept that explanation. That's not my question. It's whether it has any relevance to anything. It does because it calls into question whether or not she was married to her second husband, for which this whole claim centers on. It centers on whether or not she was married to him and whether he suffered harm on account of a protected ground. And she could not, with her testimony and her evidence, do that because she has no basis to understand why her husband died. She gives us no basis as to why she was harmed other than that they harmed her because of him. Well, they delivered the body to her. Yes, but that doesn't explain why he died. And ultimately, it comes down to this Court's standard of review. This Court cannot simply just pick an alternative explanation that is presented by the alien. It has to review the record as a whole and determine whether or not the evidence compels reversal. And it simply does not do so in this case. Well, that's conclusory, counsel. You know, we accept that burden, the reason we're asking these questions. So she makes a specific explanation that in Russia it is OK to change the name. And that's all she says. And that's not questioned on the record. The IJ doesn't follow up on that and say, well, why would you do that or anything else? You say, well, she isn't bound by the answer. Well, so that means that the IJ can just simply disbelieve all the explanations about Russian procedures. We get lots of cases about foreign countries' procedures that are a lot different from the procedures in the U.S. and there's some government evidence to indicate questions about, for example, China or, you know, the Middle East where the records are issued differently. Here's a perfectly valid answer on its face. There's nothing inherently incredible about it. If in Russia they allow, in effect, not having to go through an adoption, they allow the current father who's raising the child to be listed on a birth certificate, it's a little hard to just say, well, the answer to that is that the IJ didn't have to accept that. I would point out, though, that it's first that my time is up and I will answer your question. You're always allowed to answer a question. We're generous with that kind of time. As long as you answer it. Even if the question's uncomfortable. The point is, though, it's her burden of proof to establish eligibility. Yes. She has to – if she wants to make the claim that in Russia you can simply – she has the burden of demonstrating that that is Russian law. She did. No. No, wait a minute. Wait a minute. Where did she have any advance notice before she got on the stand that the IJ was going to not buy the explanation that what is common practice in Russia has to be established? Where is that? It's not on the record, but she submitted this evidence prior to. Yes. And was it objected to? No. Okay. So you didn't question it. It was questioned, though, why – the fact that her second husband was listed as the father. When was that questioned? It was during the cross-examination. During the cross-examination. So you're saying, well, she didn't lay a foundation for it by bringing in documentary evidence about Russia. Counsel, do you – are you being – that is a very troublesome answer. Because what you're saying is that the petitioner who comes in with the documentation, which isn't challenged before trial, is now giving the explanation to a direct question, and you're saying, well, too bad. She didn't anticipate, lay the factual predicate in the documentation. Even in civil trials in this country, people are given the opportunity on documentation to be challenged before trial so that they can know that they have to lay a foundation. Well, it is her burden to establish this. She – if this was a concern, she could have requested a continuance to specifically support this claim. When would she have known that she needed a continuance? When did the I.J. issue the oral opinion? At the end of the argument. But prior to – So she should have at that point after argument moved for a continuance to reopen the record? No. Prior to the issuance of the decision. Well, how could she? Where does the I.J. say, I don't find that explanation credible? Right then and there. So she could say, okay, well, then if you're not satisfied with my answer, I want a continuance so I can go out and establish it. Well, counsel for Sultanova had the opportunity to redirect and could have attempted to bolster her testimony. Why, counsel, why? Why would I go on redirect when she gave the answer? She said, in our country it doesn't matter if I decide I want him to be the father, the birth certificate you can after he turns 16 years old. Question, and that document was issued in January 2000, is that right? Yes. Okay, where does the I.J. say, well, that sounds strange to me. I've never heard of being able to do that. Where is the evidence about Russia? I hope I'm as prescient as you as a cross-examiner putting somebody on, trying to understand that when you get an answer to a question that the judge has posed and the judge doesn't evidence any trouble with the answer to say, well, now, as a protective matter, I'm going to ask for a leave to continue these hearings. I'm going to now go out and try to establish Russian law on this, even though it hasn't been challenged by the government. Is that the essence of your answer? The essence is she has the burden of proof. Okay, well, that's not an answer. I think we're going around in circles. Okay. Thank you. To go back to the question that was posed earlier, the only brief for the passport issue was at page 23 of the opening brief, and it was barely just a brief mention of it. Regarding the opportunity to respond to the issue of the beating on the street, I think Judge Gold was correct in that the I.J. never gave the Petitioner an opportunity to answer that question, and I would argue that in terms of the sequence of the questions, I mean, as the Court was just mentioning earlier, in terms of an asylum testimony, it all has to do with the question that's posed to the Petitioner. And in terms of the direction of it, it might be changed given the questions that are posed by the judge. And I think in this instance, the fact that the Petitioner, if she did not mention it in direct, it's simply because the question was not posed to her, and she was never confronted with it afterwards by the I.J., whom we already pointed out that it was left out of the testimony, but without given an opportunity to respond to it. We would argue that in terms of the birth certificate, the birth certificate provides evidence or support for the claim that she was married to this individual, and her explanation, I think, you know, is a valid explanation. As the Court pointed out, she was not asked to establish, you know, what Russian law was. She established it through her own testimony. And that explanation would not question the Court. If there are no further questions, I will submit. All right.  All right. Case argued is submitted. Thank you, counsel. All right. The next case on calendar is the rise of Flores versus Holder. This Holder fellow is quite litigious. He's gotten quite busy after he took office.
judges: B. Fletcher, Fisher, Gould